# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00584-CR

**Jacob Busbee, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-19-904034, THE HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jacob Busbee of the offense of stalking, which was charged as a second-degree felony because Busbee had a prior conviction for stalking. *See* Tex. Penal Code § 42.072(a), (b). The jury assessed punishment at thirteen years' imprisonment, and the district court rendered judgment on the verdict. In a single issue on appeal, Busbee asserts that the district court erred in concluding that his prior conviction was admissible during guilt / innocence as an element of the offense. Because we conclude that any error in admitting the evidence was harmless in this case, we will affirm the district court's judgment.

## BACKGROUND

The State alleged and presented evidence at trial that on multiple occasions between December 3, 2017, and March 1, 2018, Busbee sent the victim, his ex-girlfriend,

unsolicited and harassing text messages, including threats of violence against himself and others if she did not agree to speak to him. We discuss this evidence in more detail below.

The State further alleged that Busbee had a prior conviction for stalking in 2016, which, if proven, would make the offense a second-degree felony (without a prior conviction, stalking is a third-degree felony). At the beginning of trial, the State requested permission from the district court to present evidence of Busbee's prior conviction during the guilt / innocence phase of trial to prove the enhancement allegation. Busbee objected, arguing that the evidence was admissible only during punishment. Initially, the district court agreed with Busbee and excluded the evidence. However, the district court reconsidered its ruling later during trial and allowed the State to present the evidence, which was admitted in the form of a pen packet containing documents related to Busbee's prior conviction.

After hearing the evidence, the jury found Busbee guilty of stalking as charged. This appeal followed.

## DISCUSSION

In his sole issue on appeal, Busbee asserts that his prior conviction for stalking was admissible only during punishment as evidence to prove the enhancement allegation. The State argues in response that the prior conviction was admissible during guilt / innocence as an element of the charged offense.[1] To resolve this issue, we would need to construe the prior-

---

[1] The State also argues that Busbee forfeited this issue when he stated that he had "no objection" to the admission of the evidence. We disagree. The record reflects that Busbee objected at the time the district court announced that it had reconsidered its ruling on the admissibility of the evidence, and he obtained a running objection at that time. Although Busbee later stated that he had "no objection" when the State offered the evidence, he also reminded the district court of his earlier objection and clarified that he was "not waiving our previous objection." The district court responded, "Okay. We are on the record; so it is noted." We conclude that this record "plainly demonstrates that neither the appellant nor the trial court

2

conviction provision in the stalking statute, *see id*. § 42.072(b) (providing that stalking "is a felony of the third degree, except that the offense is a felony of the second degree if the actor has previously been convicted of an offense under this section"), in light of two seemingly conflicting opinions by the Court of Criminal Appeals that have construed prior-conviction provisions in other statutes, *see Oliva v. State*, 548 S.W.3d 518, 520–22 (Tex. Crim. App. 2018) (holding that prior conviction for DWI was admissible only during punishment); *Calton v. State*, 176 S.W.3d 231, 233 (Tex. Crim. App. 2005) (holding that prior conviction for evading arrest was admissible during guilt / innocence); *see also Oliva*, 548 S.W.3d at 535–36 (Richardson, J., concurring) (observing that court's holding in *Oliva* "conflicts with" and "runs afoul of" court's holding in *Calton*).

However, we need not resolve this issue today, because even if Busbee's prior conviction should not have been admitted during guilt / innocence, we cannot conclude on this record that Busbee was harmed by its admission. "The erroneous admission of evidence is non-constitutional error." *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) (citing *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008)). "Non-constitutional errors are harmful, and thus require reversal, only if they affect Appellant's substantial rights." *Id*. (citing Tex. R. App. P. 44.2(b)). Under this standard, "an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict." *Id*. "If we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction." *Id*. "In making this determination, we consider: (1) the character of the alleged error and how it might be considered

---

regarded [his] 'no objection' statement as an abandonment" of his earlier objection. *See Thomas v. State*, 408 S.W.3d 877, 886 (Tex. Crim. App. 2013). Thus, Busbee has not forfeited the issue.

in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error." *Id*.

First, we observe that the State did not emphasize Busbee's prior conviction. Because of the district court's initial ruling excluding the evidence, the State did not recite the portion of the indictment alleging Busbee's prior stalking conviction when Busbee was arraigned before the jury at the beginning of trial, nor did the State mention the prior conviction during its opening statement. Evidence of Busbee's prior conviction was not admitted until near the conclusion of the State's case-in-chief, in the form of a pen packet containing the judgment of conviction, Busbee's fingerprints, and his booking photos. The documents contained no details regarding the circumstances of the offense, other than the dates on which the offense occurred, which were referenced in the judgment. The pen packet was admitted during the testimony of the State's final witness, an investigator with the Travis County District Attorney's Office, who testified to the contents of the pen packet and confirmed that Busbee was the person identified in the documents. However, the State elicited no testimony from the investigator as to the circumstances surrounding the prior conviction. Also, the State mentioned the prior conviction only once during its closing argument, near the end, and did not discuss the conviction in detail:

> And, additionally, we provided you proof that he has a prior stalking conviction when you heard from Investigator David Austin who stated that his fingerprints that he rolled yesterday matched the same fingerprints from the booking photo of his stalking conviction. And you can look through those documents yourself, and you will see that he has a prior conviction for stalking.

Rather than focus on Busbee's prior conviction, the State emphasized the evidence pertaining to the current offense, including over 100 text messages that Busbee sent to

4

the victim between December 3, 2017, and March 1, 2018, the dates alleged in the indictment. Photographic images of the messages, as seen on the victim's phone, were admitted into evidence without objection, and many of the messages were read into the record during the victim's testimony. The messages included the following:

**December 3, 2017, beginning at 3:30 a.m. and continuing through 4:10 p.m.:** [I]f I have to come next door to get you, I will come to the fence or at least the window. . . . I'm waiting I know you're in there. . . . Come out now to the fence and we will talk it won't be pretty if I have to come over. . . . Now [] we both know you're there. . . . Why are you doing me this way . . . . I'm waiting . . . . At least go to the window.

**December 4, 2017, beginning at 7:36 p.m. and continuing through 10:51 p.m.:** I love you. . . . Go outside and look at the moon. . . . I know you're next door. . . . I see your phone light up every time I call it.

**December 7, 2017, beginning at 7:36 p.m. and continuing through 10:38 p.m.:** I can't stop loving you. . . . I know I've ruined your life . . . I'm not asking to hang out or anything just maybe a phone call once a week just so I can hear your voice god I miss your voice I know you still think about me . . . . I know where [the victim's boyfriend] lives and [the victim's ex-husband] but I'm not that person anymore I'm not going to do anything to either one of them I've done and caused enough hurt and problems as it is all that matters to me is that you're happy and healthy. . . . Please [] I need you as a friend at the very least. . . . Text me back what you decide.

**December 8, 2017, beginning at 5:38 p.m. and continuing through 11:56 p.m.:** Will you . . . please let me know something [] I don't deserve to be treated this way. . . . Please [] at least tell me you don't want anything to do with me. . . . [P]lease tell me something I love you please.

**December 12, 2017, beginning at 1:48 p.m. and continuing through 10:26 p.m.:** [W]ill you call me please this is fucking ridiculous. . . . [W]hat the fuck this is bullshit and you fucking know it how did you go from loving me so much to fucking nothing hell you said you loved me still two months ago. . . . I don't care [if] you're fucking someone I care about your well-being and what's going to happen in your life.

5

**December 14, 2017, beginning at 4:00 a.m. and continuing through 2:35 p.m.:** I'm coming over I need to talk. . . . I guess I'll head up to your work and if [you] aren't there I'll go wait on you at your apartment call me . . . . Come outside.


**February 28, 2018, beginning at 7:36 p.m. and continuing through 11:55 p.m.:** Please respond . . . . Well I finally did it I had sex with [another woman] . . . . I miss you and love you very much. . . . Someone posted some horrible pictures about you having herpes on your work's Facebook. . . . By the way your work knows you have herpes it's on their Facebook I read it earlier and your boyfriend won't be there much longer eye for an eye tooth for tooth. . . . I don't think you've been reading your f****** emails maybe you should look them up and read the Thousand I've sent. . . . You have till midnight or piece by piece you will be ruined like I am I don't want to do this to you all I want to do is talk. . . . You think I give a f*** about going back to prison? My life is ruined already in the moment. I sent police I will kill myself. Matter of fact, I might just go ahead and do that. Send every doctor every video of you and [the victim's ex-husband] and you and your piece of shit boyfriend that I got from your computer and your phone and your work will be disgusted of you like your family. That's why you have no family. . . . I'm going if you do not come. . . . To kill myself if you do not come. . . . But I'll make sure you're ruined your life will be ruined before I do. . . . Time's running out.


**March 1, 2018, beginning at 3:24 a.m. and continuing until 12:43 p.m.:** I'm sorry for going off on you. . . . I guess I'm going to just catch you going into work . . . . Your boyfriend can't be with you 24/7 and I ain't got s*** to do. . . . You think you're just one big all happy family now because he's got kids and [the victim's child] he won't for long . . . . [The victim's child is] good he will always be safe but idk about [the victim's boyfriend's children]. . . . Anyways [the victim's boyfriend] will suffer and beg for mercy. . . . I won't be alive . . . . Karma's a bitch. . . . Fine don't answer I'll just meet you up at your work you have to get there sometime and you have to leave sometime so I'll see you either way. . . . I'm not going to stop until you answer and I will come and see you I don't care about the police I just want you to tell me. . . . If you care what happens to your boyfriend and his kids then answer the phone and give me my two minutes if you don't then you don't care about none of us. . . . And then you don't play games I got game for you I'm going to break into your house [and overdose on drugs] and then have you find me when you get home it will be too late just because you couldn't answer the f****** phone. . . . I see you're keeping your place a little more cleaner looks nice Boyfriend buy all this. . . . Let's see what's on the computer . . . . Tablet . . . . I knew my key would come in handy . . . . And I'm gone like I was never there. . . . You got some new things nice and inside two things you'll keep forever are two nifty little gadgets no more secrets. . . . I sure hope the kids don't find it. . . . man what I have in store for you two. . . . one phone call and I can have you in prison you need to be at my

mom house by 5 p.m. no later, no ifs, no buts and the bag it's in has your fingerprints all over it. . . .  too bad these are beautiful little children y'all two look so cute all cuddled up his kids are f****** dead if you're not here by 5 you'll be put in prison for what's in your house and I'll be dead.

The victim also testified that beginning on March 1, her employer began receiving emails containing pornographic images that referenced the victim by name.  A pornographic image was attached to one of the text messages that Busbee sent to the victim, as were images showing a tattoo of the name of the victim's child on Busbee's arm.  The victim further testified that Busbee, in addition to sending her text messages, called her repeatedly on February 28 and March 1, demanding that she come and see him at his mother's house.  The victim recorded one of the phone calls, and a copy of the recording was admitted into evidence without objection and played for the jury.  In the call, Busbee can be heard screaming at the victim, calling her a "stupid bitch" who had sent him to prison, and telling her that if she did not agree to see him, "this is just the beginning."  The victim testified that she felt "overwhelmed and humiliated and scared and hopeless and terrified" as a result of Busbee's behavior.

To convict Busbee of stalking, the State needed to prove beyond a reasonable doubt that Busbee, "on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engaged" in certain conduct or communication that a reasonable person would regard as harassing or threatening.  *See* Tex. Penal Code § 42.072(a).  The State presented ample evidence, summarized above, that on more than one occasion and pursuant to the same scheme or course of conduct that was directed specifically at the victim, Busbee communicated with the victim in a manner that a reasonable person would regard as harassing or threatening.

7

On this record, we cannot conclude that the admission of Busbee's prior conviction, even if erroneous, had a substantial and injurious effect or influence in determining the jury's verdict. Accordingly, the error, if any, was harmless. *See* Tex. R. App. P. 44.2(b); *Gonzalez*, 544 S.W.3d at 373–74 (concluding that erroneous admission of extraneous-offense evidence was harmless in part because State did not emphasize evidence); *Motilla v. State*, 78 S.W.3d 352, 356–58 (Tex. Crim. App. 2002) (concluding that erroneous admission of prejudicial evidence was harmless in part because State presented "substantial" evidence of appellant's guilt).

We overrule Busbee's sole issue on appeal.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed: March 17, 2021

Do Not Publish

8